BRUNOT, J.
 

 The plaintiff is the record owner of the property involved in this litigation. It filed a slander of title suit coupled with a demand for damages. The defendants, in their answer, assert ownership of the property, thereby converting the suit into a petitory action. 'The De Soto Corporation was adjudged to be the owner and in the lawful possession of the property, and the demands of the Roberts Lumber & Grain Company Inc., et al. were rejected at their costs. Prom this judgment, the defendants appealed.
 

 The trial judge, in an exhaustive and well-considered opinion, has accurately reviewed the facts of the" case and has correctly applied the law applicable to the established facts. We quote from his opinion, with approval, as follows:
 

 “The defendant corporation was organized in May, 1915, the incorporators being seven in number, four of whom were residents of Caddo Parish, Louisiana, and three of the State of Kansas. In February, 1916 the Defendant corporation, Roberts Lumber & Grain Co., purchased from the Bank of Commerce the lands involved in this litigation, together with other lands, the recited consideration being $51,500.00, represented by one note of the vendee, secured by vendor’s lien and mortgage upon the property sold.
 

 “The consideration of the deed from the Bank of Commerce to the defendant corporation, that is the mortgage note, was pledged to the Bank to secure ordinary notes of the corporation, together with other indebtedness of the corporation and was so held and pledged from 1916 to 1924, when it was surrendered for cancellation, upon the then indebtedness of the defendant corporation being paid out of a loan made by E. P. Lee to T. G. Roberts.
 

 “Prior to that time the defendant corporation, acting through T. G. Roberts its president, executed a deed to T. G. Roberts, individually, covering the property involved in this litigation. The deed in question was made under authority of-a resolution of the board of directors wherein, it was recited that all members of the Board were present.
 
 *623
 
 This deed was duly recorded in the records of DeSoto Parish, Louisiana, and remained unchallenged on the conveyance records thereof over eight years. In- August 1924 T. G. Roberts then the record owner of said lands executed a mortgage to E. P. Lee for $20,000.-00, which was deposited in the Bank of Commerce & Trust Co., successors to Bank of Commerce, to the credit of the defendant corporation, and $15,000.00 of said amount used to discharge the indebtedness of 'said defendant corporation to said bank. Later the said T. G.. Roberts executed a second mortgage in favor of the Bank for $30,000.00 on said lands to secure an indebtedness due by him and by the Roberts Lumber Company, which was assumed by Roberts to said Bank. This mortgage note has remained in the hands of the Bank until this time to secure the indebtedness of the said Roberts to the Bank.
 

 “In Í926 Roberts having defaulted in payment of interest due E. P. Lee the note held by Lee was foreclosed on, but the suit dismissed when other parties purchased the notes. In 1928, the said Roberts having defaulted in his obligation to the Bank on its second mortgage, suit was instituted on said note,-but discovering there was an error in the description of the lands in the second mortgage, the Bank purchased the first mortgage notes issued by Roberts to Lee in 1924, and instituted foreclosure proceedings on the same, having dismissed the suit foreclosing upon the second mortgage. This last proceeding was filed on August 6,1928, and the properties sold to the Bank at public outcry for $22,000.00. The Bank later transferred the properties to the plaintiff herein.
 

 “A short time prior to the filing of the foreclosure proceedings by the Bank, the individual defendants, who were all stockholders of the Roberts Lumber & Grain Co. Ltd., defendant herein, apparently for the first time became interested in the affairs of the corporation, by filing suit against T. G. Roberts, the president thereof, seeking to set aside the sale by the defendant corporation to himself, for numerous reasons set forth in their answer, herein, as well as a suit which was filed in June 1928 in the District Court of Caddo Parish, Louisiana.
 

 “From the time the defendant corporation was organized in 1915, to June, 1928, it does not appear that any of these individual defendants had anything»to do with the management of ttye corporation or seemed to have any interest in its affairs — this being shown by the evidence taken herein, that they never attended directors or stockholders meetings, but left the entire management and control of the defendant corporation to the said T. G. Roberts, president, and the resident stockholders and officers. All of the resolutions of the director’s meetings appear to have been signed by T. G. Roberts, E. C. Barlett and Mrs. L. M. McCormack, who lived in Caddo Parish, Louisiana, the domicile of the corporation. This fact alone makes it clear that the affairs of the corporation were left in the hands of the four directors herein named, without protest from the others until the year 1928.
 

 “Now these nonresident stockholders are seeking to set aside the deed to T. G. Roberts, made in 1920, to the prejudice of the plaintiff herein, for the various reasons set forth in their answer.
 

 “The deed from .the defendant corporation to its president acting through him
 
 *625
 
 self, is valid upon its face because made upon a resolution annexed to the deed, which recited that it was unanimously passed at a meeting of the board of directors of the corporation, with all members present, and third parties, in the Court’s opinion, had a right to rely upon its recitations. Even if the same were not valid, it was only voidable, and in order for the corporation to set the same aside it should not be guilty of laches, but should have acted to disaffirm the same within a reasonable time. Also the corporation received the benefits of the loan made by Roberts and has not offered to refund the same, as this money was used to pay its indebtedness.
 

 “The deed in question was entirely regular and the Court does not think the contrary can be shown to the prejudice of third persons. In Thompson on Corporations, 3rd Edition. Yol. 2, p. 711, paragraph 1268, it is said:
 

 “ ‘As a rule, illegality or irregularity in a directors meeting cannot be set up to defeat the right of innocent third parties dealing with the corporation, for, in the absence of notice to the contrary, they have a right to assume that the proceedings were legal and regular, that notice was given, that a quorum was present, that the meeting was called in the mode prescribed by the charter and bylaws. A purchaser for value and without notice of irregularity, was held to acquire a good title, where the number of directors who authorized the contract to be made was less than the number required to constitute a quorum.
 

 “ ‘There is always a presumption in favor of a quorum and regularity of proceedings.’
 

 “In Fletcher on Corporations, Par. 1891, citing inter alia Ross v. Crockett, 14 La. Ann. 811, it is said:
 

 “ ‘Presumption in favor of meeting — Whenever an act purports to have been authorized by the board of directors, it will be presumed, until the contrary is shown, that they acted at a meeting, that proper notice of the meeting was given to all the directors, that a quorum of the directors was present, that the meeting was held in accordance with law, and that the act was authorized by a majority.’
 

 “In the same authority, Sec. 1891, it is said:
 

 “ ‘The rule is that illegality or irregularity in a directors meeting cannot be set up to defeat the rights of innocent third persons dealing with the corporation, since, in the absence of notice to the contrary, they have a right to assume that the proceedings were legal and regular, that notice was given, that a quorum was present, that the meeting was called in accordance with the charter or bylaws.’
 

 “It is apparent, however, that if the deed is not valid upon its face, on account of being a deed from a corporation acting through its president to himself individually, that such a deed is not void, but merely voidable. In Thompson on Corporations (3d Ed.) Yol. 2, p. 808, par. 1332, citing a long line of authorities, it was said:
 

 “ ‘The American courts, with some exceptions already noted, take perhaps, the more practical view that contracts already entered into by directors with themselves as individuals are not per se void, but are merely voidable at the option of the corporation or of the stockholders, provided the disaffirm
 
 *627
 
 Anee is exercised within a reasonable time, all the circumstances of the case considered.’
 

 ' “In Vol. 6, p. 474, par. 4853, the learned author says:
 

 “ ‘A corporation must sue with sufficient promptness to enable the court to do justice to it without injustice to innocent third persons. The right to sue is lost by laches and unreasonable delay.’
 

 - "In Sec. 1965, Fletcher on Corporations, the learned author says:
 

 . .“.‘If officers of a corporation exceed their powers, their acts may be repudiated by the board of directors. However, if the officers desire to repudiate a sale by executive officers, they should act promptly, notify the other party to the contract, and return benefits received.’
 

 “ ‘Individual stockholders may be estopped to attack a contract or other transaction on behalf of the corporation on the ground that directors or other officers were personally interested. * * * The right of individual stockholders to complain may also be barred by laches. * * * Laches in suing to set aside transfers of property to corporate officers often depends on whether the stockholder who sues is chargeable with knowledge of the transfer. As to this matter it is generally held in this country that means of knowledge within the reach of stockholders by the exercise of the slightest diligence, is in legal effect the equivalent of knowledge. * * * The lapse of three years had been held in a particular ease such laches as to prevent a stockholder from seeking to set aside a foreclosure sale of corporate property on the ground that the purchaser was a director or trustee of the corporation.’
 

 “It may be contended that the stockholders of the defendant company suing for the use and benefit of the defendant corporation, had no knowledge of the transfer from Roberts as president of the corporation to himself individually. The answer to this is that by their own evidence, taken in the City of Shreveport, it was conclusively, shown that they resided in the State of Kansas, and left the entire management and supervision of the corporation to the resident directors, and that they cannot, after thus failing to comply with their duties as directors and stockholders, take advantage of such failure to the prejudice of innocent third parties. •
 

 “In Thompson on Corporations (3d Ed.) Vol. 3, p. 355, § 1783, citing a long line of authorities, some by the U. S. Supreme Court, it is said:
 

 “ ‘The law will impute to a corporation knowledge of facts which its directors ought to know in the exercise of ordinary diligence in the discharge of their official duties, 'when the imputation of such knowledge to the corporation is necessary to protect the rights of third persons. The directors are presumed to know that which it is their duty to know and which they have the means of knowing.’
 

 “Again in the same volume, on page 349, par. 1779, it is said:
 

 “ ‘The board of directors is generally charged with constructive knowledge of the facts disclosed by the corporate records, books and papers.
 

 “ ‘Directors who fail to examine the corporate books for years or to investigate how the business is being conducted by the manager must be deemed to have constructive knowledge that the manager was speculating
 
 *629
 
 In the name of the corporation on the Chicago Board of Trade as shown by the entries in such books. Fletcher on Corporations, page 3725.
 

 . “‘The contention that directors are shielded from liability because of want of knowledge of wrongdoing if the result of gross inattention, is disapproved; directors must use ordinary intelligence.’ Bank of Commerce v. Goolsby, 129 Ark. 416 [196 S. W. 803; Walton County Bank v. Stanton, 38 Ga. App. 591], 144 S. E. 815.
 

 “ ‘A director is charged with knowledge of all lawful acts done by the Board through a meeting at which he was not present. Sumner Coal Mining Co. v. Pleasant, 127 Okl. 174, 259 P. 1055.’
 

 “As to estoppel and accepting benefits the Courts have held:
 

 “.Thompson on Corporations, Yol. 3, page 706, with reference to estoppel where the Corporation has received Benefits, citing a long line of authorities, says:
 

 “ ‘A corporation receiving borrowed money And appropriating it to its own use, may not urge-invalidity of the contract of borrowing on the ground that the meeting of the board of directors authorizing the loan was illegal.’
 

 “Again, ‘A corporation was held not entitled to repudiate a trust deed executed by its president for want of authority, where the property was returned and used in the corporate business.’
 

 “ 'Return of Consideration: “As a general rule if a corporation repudiates or sues to set aside a contract, conveyance or other transaction between it and its directors or other officers, alone or with others, it is bound to return the consideration if any which It received, if it can do so, just as in any other case of rescission. If it cannot return the consideration, whether it was in money, labor or services, and the contract is repudiated, it will, at the least be liable .to the extent of the money or other benefit which it has actually received or enjoyed.” Fletcher on Corporations. Par. 2403.’
 

 “As to the plea of Prescription of five years filed by the plaintiff herein, the courts have held:
 

 “In Dorion v. Lock, Moore & Co., 165 La. 63 [115 So. 366] it was said:
 

 “ ‘In all cases of executed contracts susceptible of ratification, a presumption of ratification juris et de jure results from silence and inaction during the time fixed for prescription.’
 

 “To the same effect is Brownson v. Weeks, 47 La. Ann. 1042. [17 So. 489].
 

 “See also: Barnes v. Barnes, 155 La. 981 [99 So. 719]; Vaughan v. Christine, 3 La. Ann. 328; Greenwood v. City of New Orleans, 12 La. Ann. 431; Mendelsohn v. Armstrong, 52 La. Ann. 1304 [27 So. 735]; Doucet v. Fenelon, 120 La. 45 [44 So. 908].
 

 “If the deed from the Roberts Lumber
 
 &
 
 Grain Co. Inc., acting through its president, T. G. Roberts to himself individually, of date May 13, 1920, was not void but voidable, then under the Civil Code, article 3542, a presumption of ratification de juris et de jure arises from inaction to set aside or rescind said deed within a period of 5 years from its date.”
 

 For the reasons assigned and the authorities relied upon by the trial judge, it is de
 
 *631
 
 creed that the judgment appealed from, be, and it is, affirmed at appellant’s cost.